

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| RIDGETOP MANOR, LLC, | ) | No. ED112761 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | Case No. 24SL-AC06504-01 |
| | ) | |
| LISA M. WHITE, | ) | Honorable Nicolette A. Klapp |
| | ) | |
| Appellant. | ) | Filed: June 17, 2025 |

### Introduction

This appeal concerns the rule of law. It addresses whether objecting to personal jurisdiction and then filing a counterclaim afterwards waives a jurisdictional defense and how Chapter 534's service of process section should be applied. Lisa White appeals the circuit court's judgment in an unlawful detainer action granting Ridgetop Manor, LLC possession of an apartment. In Point I, White argues Ridgetop violated § 534.090.1–2 because it did not attempt personal service before attempting service by posting process on her apartment door and mailing it to her address, as the statute requires.[1] In Point II, White argues service by mail was deficient because Ridgetop forwarded the summons to the special process server before the issuing date.

As to Point I, this Court holds § 534.090 should be strictly applied such that any violation of the statute constitutes reversible error. This Court holds Ridgetop violated § 534.090 because

---

[1] All statutory references are to RSMo Cum. Supp. 2024.

(1) Ridgetop did not demonstrate it attempted personal service before posting and mailing service, (2) the circuit court never entered an order for service by posting or mail, (3) Ridgetop never requested such an order, and (4) Ridgetop did not demonstrate it posted a notice in one public place in the county where White was believed to dwell. This Court further holds White did not waive her insufficient service of process argument because she raised it in her first responsive pleading, and, having done so, was permitted to probe into the merits and file a counterclaim. Point I is granted. Because Point I is dispositive, this Court declines to address Point II. The circuit court's judgment is vacated and remanded with specific instructions to dismiss without prejudice. Ridgetop's motion for attorney fees taken with the case is denied.

## Factual and Procedural History

White signed a one-year lease with Ridgetop in September 2023. Ridgetop terminated White's lease for violations of its community policies. White refused to vacate. Ridgetop filed its unlawful detainer petition and request for special process server on March 1, 2024. The circuit court granted the request for a special process server on the same day, but noted the summons should not be forwarded to White before the issue date of March 5th. In its order, the circuit court warned the "[f]ailure to follow these instructions may result in your summons being returned." On the server's return, the server wrote he had mailed the summons and petition to White on March 4, 2024, and posted it to her apartment door on March 8, 2024, at 11:06 a.m. White failed to appear for her court date on March 26th, and the circuit court entered a default judgment against her the following day.

On April 4th, White filed a "Motion to Overturn/Dismiss" and a "Motion to Counter Sue" as a *pro se* defendant. In the Motion to Overturn/Dismiss, White alleged, "I was not served .… They didn't request to server [sic] by posting and mail. They have to try to SERVE ME by in-person and then by mail." In the Motion to Counter Sue, White brought statutory claims of

2

falsifying documentation against Ridgetop. The circuit court treated the Motion to Overturn/Dismiss as a motion to set aside the default judgment, and, on April 9th, set aside the default judgment. With both parties' consent, the circuit court continued the case for a bench trial on April 30th. White filed another motion to dismiss on April 22nd alleging she was not served.

Before the bench trial, the circuit court took up White's April 22nd motion to dismiss. White argued, "I was not served at all, besides the mail that came to me. Nothing was post on my door. I was not served in person …. And also they did not apply to post and mail – serve by post and mail, which is also a part of the law that they have to do." She further stated, "Only piece of – thing I got is the mail, and I have that original paperwork too." Ridgetop argued she had waived those arguments because she filed multiple motions and appeared for trial. The circuit court found that by filing the counterclaim, White had "availed herself of service in this court." It also found posting was a valid way to serve White because it was authorized by § 539.040 and overruled her April 22nd motion to dismiss.[2] After the trial, the circuit court issued its judgment in Ridgetop's favor, granted it possession of the apartment, and awarded it $4,557.25 in damages.

This appeal follows.

## Standard of Review

"[This Court] review[s] an appellant's challenge to whether the [circuit] court's order is void for lack of personal jurisdiction de novo." *A.R.J. v. C.M.L.*, 575 S.W.3d 738, 741 (Mo. App. E.D. 2019) (quoting *Bate v. Greenwich Ins. Co.*, 464 S.W.3d 515, 517 (Mo. banc 2015)).

---

[2] The circuit court overruled White's Motion to Counter Sue because counterclaims are not allowed in an unlawful detainer proceeding. *Wells Fargo Bank, N.A. v. Smith*, 392 S.W.3d 446, 455 (Mo. banc 2013).

**Discussion**

*Point I: Lack of Personal Jurisdiction Because of Insufficient Process*
*Party Positions*

In Point I, White argues she received insufficient service of process because the unlawful detainer's notice statute requires an attempt at personal service before authorizing service by posting or mail. Ridgetop argues White provided no evidence she was not personally served before the summons was posted on her apartment door and mailed to her.

*Analysis*

"Missouri courts recognize two kinds of jurisdiction: subject matter jurisdiction and personal jurisdiction." *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 252 (Mo. banc 2009). "[P]ersonal jurisdiction refers quite simply to the power of a court to require a person to respond to a legal proceeding that may affect the person's rights or interests." *Id*. at 253. "Proper service of process is a prerequisite to personal jurisdiction." *State ex rel. Nutall v. Missouri Dep't of Corr.*, 671 S.W.3d 872, 874 (Mo. App. E.D. 2023). "A court lacks the power to adjudicate when the requirements for proper service of process are not met." *Killingham v. Killingham*, 530 S.W.3d 633, 635 (Mo. App. E.D. 2017) (quoting *Maul v. Maul*, 103 S.W.3d 819, 821 (Mo. App. E.D. 2003)). Thus, "[o]nly by service of process authorized by statute or rule ... can a court obtain jurisdiction to adjudicate the rights of a defendant." *Chick v. Moving Proz, LLC.*, 699 S.W.3d 449, 454 (Mo. App. W.D. 2024) (quoting *Scott by & Through Scott v. Borden*, 648 S.W.3d 68, 73 (Mo. App. W.D. 2022)).

*A. § 534.090 Was Violated*

"The unlawful detainer remedy is a creature of statute described in Chapter 534 of the Missouri Revised Statutes." *State ex rel. Deutsche Bank Nat. Tr. Co. v. Chamberlain*, 372 S.W.3d 24, 28 (Mo. App. W.D. 2012). "The unlawful detainer statutes provide for summary relief and are an exclusive and special code." *Wells Fargo*, 392 S.W.3d at 454 (quoting *Broken Heart Venture,*

4

*L.P. v. A & F Rest. Corp.*, 859 S.W.2d 282, 286 (Mo. App. E.D. 1993)). "As such, Missouri courts construe the unlawful detainer statute consistent with its intended 'special summary nature.'" *Deutsche Bank*, 372 S.W.3d at 28 (quoting *Lake in the Woods Apartment v. Carson*, 651 S.W.2d 556, 558 (Mo. App. E.D.1983)).

Section 534.090 states the technical requirements for service in an unlawful detainer proceeding. First, the statute states the summons "shall be served as in other civil cases." § 534.090.1. The Legislature's use of "shall" denotes a mandatory requirement. *Am. Fed'n of State, Cnty. & Mun. Employees, AFL-CIO, Council 61 v. State*, 653 S.W.3d 111, 120 (Mo. banc 2022). Other civil cases require personal service. *Williams & Pearson v. Dittenhoefer*, 86 S.W. 242, 244–45 (Mo. 1905).  Personal service on an in-state defendant can be attained in three ways under Rule 54.13(b):

> (1) by delivering a copy of the summons and petition personally to the individual; (2) by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person of the individual's family over the age of 15; or (3) by delivering a copy of the summons and petition to an agent of the individual.

*M.F.S.D.-C.S.E. v. J.M.*, 651 S.W.3d 834, 837 (Mo. App. E.D. 2022). Second, § 534.090.2 states:

> *If* the summons in such action *cannot* be served in the ordinary manner as provided by law, it *shall* be the duty of the judge before whom the proceeding is commenced, at the request of the plaintiff, to make an order directing that notices shall be set up for ten days on the premises in question *and* in one public place in the county where the defendant was believed to dwell, informing the defendant of the commencement of the proceedings against the defendant and to make an order directing that a copy of the summons be delivered to the defendant at the defendant's last known address by ordinary mail.

Emphasis added. The statute's plain language thus requires: (1) the plaintiff attempt personal service before proceeding to service by posting and mail, (2) the plaintiff request an order to post and mail the summons, (3) the court to issue this order, and (4) the plaintiff to post notices in a

5

public place in the county where the defendant was believed to dwell, separate from posting on the premises. § 534.090.1–2. This last requirement is separate from posting on the premises because of the "and" between "premises in question" and "in one public place in the county" in the statute. *Id.*; *Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 615 (Mo. banc 2016) (quoting *Hawkins v. Hawkins*, 511 S.W.2d 811 (Mo. 1974) ("and" means "'along with or together with'")). A "public place in the county" means any communal place in the county. *See State ex rel. Dorn v. Morley*, 442 S.W.2d 929, 930 (Mo. banc 1969) (construing substantially similar language to authorize posting at a police station, a courthouse, or a city firehouse).

Ridgetop provided no evidence it attempted to personally serve White before posting and mailing service, as required by § 534.090.2. Ridgetop argues White must demonstrate the lack of service. Ridgetop misunderstands who must demonstrate service under these circumstances. Because Ridgetop used a special process server instead of a sheriff, the return "is not presumed conclusive" and "must show on its face that every requisite of the rule has been complied with and may not be aided by intendments or presumptions." *Xtra Lease, LLC v. Pigeon Freight Servs., Inc.*, 662 S.W.3d 309, 315 (Mo. App. E.D. 2023) (quoting *Morris v. Wallach*, 440 S.W.3d 571, 577 (Mo. App. E.D. 2014)). Consequently, Ridgetop had the burden to demonstrate personal service based on the contents of the return it filed by the special process server.

Ridgetop did not so demonstrate. On the server's return, Ridgetop's special process server stated the service was mailed on March 4, 2024, and posted on White's apartment door on March 8, 2024, at 11:06 a.m. Nowhere on the return, however, does it indicate an attempt at personal service. The return contains check boxes for "delivering a copy of the summons and complaint to the defendant/respondent," "leaving a copy of the summons and complaint at the dwelling house," "Defendant/respondent cannot be found," and "Defendant/respondent has absconded or vacated his or her usual place of abode in this state." These boxes contemplate an attempt at personal

6

service, but none were checked. Without the benefit of intendments or presumptions, Ridgetop points to no evidence in the record of an attempt at personal service.

In addition, there is no evidence in the record of a judicial request from Ridgetop to serve by posting and by mail, no evidence of a circuit court order authorizing such service, and no evidence of posting in one public place where White was believed to dwell. At oral argument Ridgetop conceded "service was not in compliance with section 534.090."

Accordingly, this Court holds § 534.090's requirements for service were violated.[3]

### B. Violation of § 534.090 is Reversible Error

Caselaw holds service of process requirements are to be strictly applied because constructive service is "in derogation of the common law and purely the creature of statute." *Tooker v. Leake*, 48 S.W. 638, 640 (Mo. 1898); *Rodriguez*, 975 S.W.2d at 489 (holding "strict compliance with the law regarding service of process is compulsory" when finding the circuit court lacked jurisdiction over a defendant when it accepted service by mail without an affidavit as required by Rule 54.12); *Johnson v. Riley*, 573 S.W.3d 119, 123 n.5 (Mo. App. W.D. 2019) (holding "[w]hen service is sought by means of constructive notice, strict compliance with the statute and rule allowing service by publication is required.") (quoting *Rosemann v. Rosemann*, 349 S.W.3d 468, 471 (Mo. App. E.D. 2011)). Under these cases, a circuit court commits reversible error when it fails to strictly adhere to the letter of the rule or statute when effectuating service through constructive notice. *Rosemann*, 349 S.W.3d at 471–72 (holding the circuit court committed reversible error when it accepted service by publication without a verified statement

---

[3] Though no party raised this argument, this Court recognizes Ridgetop also violated Rule 54.12. "If a statute authorizes a method of service, service may be made pursuant to the provisions of the statute *or as provided in Rule 54*." *Flair v. Campbell*, 44 S.W.3d 444, 450–51 (Mo. App. W.D. 2001) (quoting *Worley v. Worley*, 19 S.W.3d 127, 129 (Mo. banc 2000)) (emphasis added). Rule 54.12(b) allows for service by mail only if the plaintiff files an affidavit explaining why personal service cannot be had on the defendant in Missouri. *Rodriguez v. Rodriguez*, 975 S.W.2d 485, 489 (Mo. App. E.D. 1998). Here, there is no evidence in the record of any affidavit from Ridgetop explaining why personal service could not be had on White in Missouri. Accordingly, Ridgetop violated Rule 54.12 as well as § 534.090.

from plaintiff as Rule 54.12(c)(2) requires); *Miller v. Jonesburg State Bank*, 174 S.W.3d 79, 81 (Mo. App. E.D. 2005) (holding the circuit court committed reversible error when it accepted service by publication without a description of the property in the publication notice).

Section 534.090 specifically prescribes the character and manner of service. Section 534.090 first *requires* the plaintiff to attempt to serve the defendant personally. § 534.090.1. *If* the attempted personal service *cannot* be made, *then* the plaintiff must request an order from the judge authorizing service by posting and by mail. § 534.090.2. The Legislature was unambiguous in requiring personal service be attempted before constructive service. *See* § 534.090.1–2. This Court has a "duty to interpret the law, not rewrite it." *Estate of Mickels*, 542 S.W.3d 311, 314 (Mo. banc 2018). We are unable to simply ignore the law as it is written.

Because (1) Ridgetop did not demonstrate it attempted personal service before posting and mailing service, (2) the circuit court never entered an order for service by posting or mail, (3) Ridgetop never requested such an order, and (4) Ridgetop did not demonstrate it posted a notice in one public place in the county where White was believed to dwell in addition to the premises in question, the unambiguous requirements of § 534.090 were violated. These multiple violations constitute reversible error.

**Waiver**

Ridgetop argues despite the lack of service on White she has waived her personal jurisdiction defense. Ridgetop contends White waived her jurisdictional defense because she (1) did not appropriately assert her jurisdictional defense, (2) acted inconsistently with her claim the court lacked jurisdiction over her, and (3) requested affirmative relief from the circuit court. White argues she did not waive her jurisdictional defense because her first responsive motion disputed the circuit court's jurisdiction over her.

8

*Analysis*

*A. General Law*

"A defendant must raise any challenges to the [circuit] court's personal jurisdiction, the sufficiency of process, and the sufficiency of service of process in either a pre-answer motion or as a defense in the answer." *Interest of A.R.B.*, 586 S.W.3d 846, 859 (Mo. App. W.D. 2019). "The failure to raise these issues at the first opportunity results in waiver of any challenges to the [circuit] court's personal jurisdiction, the sufficiency of process, and the sufficiency of service of process." *Id.*

"[T]he defense of lack of jurisdiction over the subject matter and person, insufficiency of process and service of process 'may at the option of the pleader be made by motion.'" *Farris v. Boyke*, 936 S.W.2d 197, 203 (Mo. App. S.D. 1996) (quoting Rule 55.27(a)).[4] "The rule further provides that '[m]otions and pleadings may be filed simultaneously without waiver of the matters contained in either. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion.'" *Id.* "Rule 55.27(f) states that '[a] party who makes a motion under this Rule 55.27 may join with it any other motions herein provided for and then available to the party.'" *Id.*

*B. White Properly Asserted Her Personal Jurisdiction Defense*

Ridgetop argues the Motion to Overturn/Dismiss did not properly raise White's jurisdictional defense and she thus waived the claim. It cites *Hinton v. Proctor & Schwartz, Inc.*, 99 S.W.3d 454, 461 (Mo. App. E.D. 2003), for the proposition that when a party merely "recite[s] the facts regarding the issuance and service of the summonses" but fails to specifically mention "insufficiency of process" or "jurisdiction," they fail to adequately raise the issue and so waive the

---

[4] All rule references are to Missouri Rules of Civil Procedure 2024.

jurisdictional defense. In *Hinton*, plaintiffs filed a petition for injuries suffered while using defendants' machine. *Id*. at 456. Plaintiffs committed a clerical error on the summonses because of a recent corporate merger and subsequent name change. *Id*. at 456–57. Proctor and WMC merged, with WMC becoming the surviving entity. *Id.* at 456. WMC then changed its name to WP&S. *Id.* CT Corporation was the registered agent for WP&S and was the registered agent for WMC before the name change. *Id.* Sheriff's service was made on CT Corporation naming Proctor and WMC as defendants in the suit. *Id*. at 456–57. Defendants never entered an appearance or filed a responsive pleading. *Id*. at 457. The circuit court entered a default judgment against defendants. *Id*.

Eventually, defendants first filed a Motion to Vacate Default Judgment under Rule 74.05 asserting good cause for the delay and a meritorious defense. *Id*. Because of a defect in the affidavit attached to the Rule 74.05 motion, it was overruled. *Id*. The defendants next filed a Motion for Reconsideration of Motion to Set Aside Default. *Id*. Such a motion is not provided for in Missouri's rules so it was treated as a motion for a new trial, as it was timely filed. *Id.* at 459. In this motion, for the first time, defendants alleged the summonses were invalid under Rule 54.02 and Rule 54.21. *Id*. at 461. This motion was also overruled. *Id*. at 457. Finally, defendants filed a Motion for Relief from Judgment, alleging the summonses were invalid because of the clerical errors, which was also overruled. *Id*. at 460.

This Court held defendants did not properly assert their insufficiency of process argument because the first motion filed, the Motion to Vacate, "recited the facts regarding the issuance and service of the summonses," but did not "*assert insufficiency of process or service of process.*" *Id*. at 461 (emphasis added). This Court continued, "The motion did not clearly state that [defendants] were contesting the trial court's jurisdiction or that they were not consenting to the trial court's jurisdiction." *Id*. It wasn't until their second motion, the Motion for Reconsideration, that they

10

argued the summonses were invalid under Rule 54.02 and Rule 54.21 and not until their third motion, the Motion for Relief, they argued the summonses were invalid because of the clerical errors. *Id*. at 460–61. *Hinton* simply reflects the common-sense determination that a defendant who has a colorable argument for lack of jurisdiction, and who sets out the facts supporting the claim in the motion, must also *assert* that claim. Defendants did so in their second and third motions, but not in their first. *Id*. Because defendants did not properly raise the issue in their first motion, they waived the jurisdictional defense. *Id*. at 461.

Interpreting *Hinton* in this way aligns the case with Missouri's pleading standards. Missouri is a fact-pleading state. *Doyle v. Crane*, 200 S.W.3d 581, 590 (Mo. App. W.D. 2006). The pleading must "contain a short and plain statement of the facts showing that the pleader is entitled to relief." Rule 55.05. "In determining whether a petition states a claim upon which relief can be granted, we review the petition 'to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in th[e] case.'" *Barrett v. Cole County*, 687 S.W.3d 685, 695 (Mo. App. W.D. 2024) (quoting *Matthews v. Harley-Davidson*, 685 S.W.3d 360, 366 (Mo. banc 2024)).

Ultimate facts, as opposed to evidentiary facts, must be pleaded. *Konopasek v. Konopasek*, 683 S.W.3d 250, 259 (Mo. banc 2023). Ultimate facts are those which the jury must find in order to return a verdict in favor of the plaintiff. *McConnell v. West Bend Mut. Ins. Co.*, 606 S.W.3d 181, 190 (Mo. App. W.D. 2020). Conclusory allegations of fact and legal conclusions, however, are not considered in determining whether a petition states a claim. *Id.* But "[a] petition, although imperfectly or defectively stated, will be sustained if the allegations invoke substantial principles of law which may entitle the pleader to relief." *Schnabel v. Taft Broadcasting Co., Inc.*, 525 S.W.2d 819, 821 (Mo. App. 1975).

Further, "[t]his Court elevates substance over form when reviewing a petition." *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 334 (Mo. banc 2011); *see also Rouner v. Wise*, 446 S.W.3d 242, 254 (Mo. banc 2014) (no magic words needed to create or amend a trust). "As such, a pleading is judged by its subject and substance of its recitals and not its rubric or caption." *Devitre*, 349 S.W.3d at 334, 335–36 (holding a petition whose form only included claims of battery and assault instead constituted a claim for medical malpractice).

Here, White's original Motion to Overturn/Dismiss resembles the second and third motions in *Hinton* rather than the first. White did *assert insufficiency of process and service of process* in her first pleading, unlike the first motion filed in *Hinton*. White's motion recited the facts supporting her lack of jurisdiction claim when she alleged, "I was not served … I knew nothing about [this lawsuit] until afterwards." She then asserted the legal claim she brought before this Court: Ridgetop had to "request to server [sic] by posting and mail. They have to try to SERVE ME by in-person and then by mail. I knew nothing until it was too late." In this way, White stated the ultimate facts in her motion to overturn/dismiss when she alleged she was not served. Just because she did not state her legal conclusion—the court did not have personal jurisdiction over her—does not thwart the substantial principle of law invoked by the ultimate facts she pleaded: the court lacked personal jurisdiction because of the failure in service. Ridgetop recognized as much when, at oral argument, it conceded White alleged in her first Motion to Overturn/Dismiss the default judgment she was not served and this meant "when you are not served, the court does not have personal jurisdiction." For us to hold otherwise would be to elevate form over substance and impose a hyper-technical pleading standard.[5]

---

[5] *Hinton* is procedurally distinguishable as well. *Hinton* involved an appeal from the denial of a motion to set aside a default judgment, whereas this case involves a bench trial after the circuit court previously granted a motion to set aside a default judgment. *Hinton*, 99 S.W.3d at 457. Defendants in *Hinton* also used a sheriff to deliver service, while here Ridgetop used a special process server. *Id*. at 456–57.

*Hinton* is inapposite to this case. We hold White asserted her personal jurisdiction defense.[6]

### C. A Defendant Acts Inconsistently with a Claim of Personal Jurisdiction Only When Explicitly or Implicitly Agreeing the Court has Jurisdiction Over Them but Later Disputing that Jurisdiction

Having established White properly asserted her jurisdictional defense, this Court now considers whether she waived the argument because she acted inconsistently with her claim the circuit court lacked personal jurisdiction. "Because personal jurisdiction is a 'personal privilege,'" it can be waived. *Moore v. Crocker*, 674 S.W.3d 146, 150 (Mo. App. E.D. 2023). Waiver can occur in several ways, including when the defendant acts inconsistently with a claim the court lacks personal jurisdiction. *Id*. Waiver by inconsistent action is a part of the doctrine of judicial estoppel—it "prevents a party from taking a position clearly inconsistent with an earlier" one. *GFS, II, LLC v. Carson*, 684 S.W.3d 170, 183 n.5 (Mo. App. W.D. 2023) (quoting *Holmes v. Steelman*, 624 S.W.3d 144, 151 n. 8 (Mo. banc 2021)). Waiver of personal jurisdiction thus means a defendant cannot explicitly or implicitly admit the court has jurisdiction but then later argue it does not. *See State ex rel. White v. Marsh*, 646 S.W.2d 357, 362 n.7 (Mo. banc 1983) (citing *Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc.*, 376 F.2d 543 (3d Cir. 1967) ("defendant participated in a lengthy hearing on a temporary injunction, prior to raising the jurisdictional issue, and was held to have entered a general appearance"); *Estate of Hutchison v. Massood*, 494 S.W.3d 595, 599 n.5 (Mo. App. W.D. 2016) (full participation in litigation without any objection to lack of service); *Crouch v. Crouch*, 641 S.W.2d 86, 94 (Mo. banc 1982) (finding the holding in *Sega*

---

[6] Although not raised in White's brief, this Court questions the circuit court's actions when setting aside the default judgment. White argued in her Motion to Overturn/Dismiss the default judgment should be set aside because she was not served and, as a result, the court had no jurisdiction over her. The circuit court set aside the default judgment based upon this motion without stating its grounds in its judgment. When a circuit court does not state the basis for granting a motion, this Court presumes the ruling was based on the grounds raised in the motion. *McCullen v. O'Grady*, 670 S.W.3d 94, 100 (Mo. App. E.D. 2023). Because White argued in her motion the court had no jurisdiction over her, and the circuit court set aside the default judgment without stating its reasons, this Court presumes the ruling was based on White's argument the court lacked jurisdiction over her. Because the circuit court set aside the default judgment for lack of personal jurisdiction, it should have dismissed the case without prejudice at that point, not set it for trial. *See State ex rel. DKM Enters., LLC v. Lett*, 675 S.W.3d 687, 703 (Mo. App. W.D. 2023).

*Enters. v. Bengiminia*, 589 S.W.2d 366, 368 (Mo. App. 1979) was correct because defendant acted inconsistently, as he contended before the circuit court he had been personally served, but on appeal argued service was improper). These cases demonstrate what matters in the "inconsistency" analysis is not merely a request for affirmative relief from a court, but a changing of arguments: implicitly or explicitly agreeing the court has jurisdiction and then later disputing its assertion of jurisdiction.

Here, White did not act inconsistently because she did not change her jurisdictional arguments. In her Motion to Overturn/Dismiss, the first motion before the circuit court, she explicitly argued service was improper: "I was not served … They didn't request to server [sic] by posting and mail. They have to try to serve me by in-person then by mail. I knew nothing until it was too late." She maintained this argument throughout the litigation, arguing she was not properly served in a motion filed on April 22nd and on the very day of the hearing.

D. *Requesting Affirmative Relief from a Court Does Not Waive Personal Jurisdiction If the Jurisdictional Defense Is Raised Timely*

Having established White did not act inconsistently with her argument the circuit court lacked personal jurisdiction, this Court now considers whether she waived the claim by requesting affirmative relief. To the extent the circuit court found White waived her jurisdictional defense by filing her Motion to Counter Sue, this Court disagrees. Missouri courts have held if a defendant raises her jurisdictional defense in the first responsive pleading or motion, she can "probe into the merits of a case[.]" *Walker v. Gruner*, 875 S.W.2d 587, 589 (Mo. App. E.D. 1994). The Supreme Court of Missouri in *Greenwood v. Schnake*, 396 S.W.2d 723, 726 (Mo. 1965), explained if a defendant first challenges the court's jurisdiction, she may then:

> *probe into the merits of the case* without the necessity of making the time-honored "special appearance" or reserving the jurisdictional point at each stage of the procedure. Having once hoisted the flag at the beginning of the journey a litigant over whose person a court lacks jurisdiction need not continuously wave the flag at every way station along the route.

14

*Id*. (emphasis added); *see also Walker*, 875 S.W.2d at 589.

Two cases have held that requesting affirmative relief does not waive a jurisdictional defense. In *In Re Marriage of Berry*, 155 S.W.3d 838, 841 (Mo. App. S.D. 2005), a *pro se* defendant objected to jurisdiction in her first responsive pleading before the court. She then filed a "Counter Petition for Dissolution of Marriage," in which she requested the court dismiss the case for lack of jurisdiction or "in the alternative, to dissolve the marriage; to make an equitable division of the marital property and assignment of the marital debts; to order [husband] to pay [wife] a reasonable sum for [wife's] maintenance; [and] to order [husband] to pay [wife's] attorney fees and costs herein incurred[.]" *Id*. The Southern District held the wife preserved the jurisdictional defense, even after filing a counterclaim requesting affirmative relief. *Id*. *Berry* demonstrates a defendant can both dispute jurisdiction and bring a counterclaim: the counterclaim is conditionally raised, should the party receive an adverse ruling on the jurisdictional defense.

Likewise, in *Ketteman v. Ketteman*, 347 S.W.3d 647, 652 (Mo. App. W.D. 2011), the wife challenged the court's personal jurisdiction by way of a special appearance after a family court commissioner found her in default and entered findings and recommendations of judgment of dissolution of marriage. After the commissioner overruled her motion, the wife requested affirmative relief regarding child support, her proposed parenting plan, and the division of marital property and debt. *Id*. The commissioner held a trial on the petition for dissolution and later entered findings and recommendations, which the circuit court adopted and confirmed. *Id*. at 650.

The husband asserted the wife's requests for affirmative relief waived her jurisdictional defense. *Id*. at 652. The Western District disagreed, holding once the wife raised her jurisdictional defense, "such objection was preserved throughout the proceedings" because "[i]t is not necessary to stand on your jurisdictional challenges and refuse to participate in the proceedings to preserve your objections to jurisdiction." *Id*. at 652–53. Although the wife requested affirmative relief,

15

because she had raised her jurisdictional defense in her first motion before the court, she did not waive that claim. *Id*.

Here, White did not waive her jurisdictional defense by requesting affirmative relief and countersuing. In her Motion to Overturn/Dismiss, she raised the jurisdictional defense by alleging she had not been served. Once White timely raised her jurisdictional defense, she was able to probe into the merits of the case by filing a counterclaim, as in *Berry*, or requesting an order from the circuit court, as in *Ketteman*. *Berry*, 155 S.W.3d at 841; *Ketteman*, 347 S.W.3d at 652; *see also Greenwood*, 396 S.W.2d at 726.

Ridgetop also argues White waived her jurisdictional defense when she appeared in court and consented to a continuance for the bench trial, citing *Olivia Inv. Co. v. McKee*, 86 S.W.2d 617, 618 (Mo. App. 1935) for support. However, *Olivia* was decided before the enactment of the new code and promulgation of the Rules of Civil Procedure in 1943. *See Greenwood*, 396 S.W.2d at 726. Before 1943, taking any action in the case except challenging personal jurisdiction, like consenting to a continuance, would have waived the jurisdictional defense. *Id*. at 725. Yet, "[t]he enactment of the new code and the promulgation of the Rules of Civil Procedure have changed the law and have 'considerably lightened the burden of one who wishes to question the jurisdiction.'" *Id*. at 726 (quoting *State ex rel. Ballew v. Hawkins*, 361 S.W.2d 852, 858 (Mo. App. 1962)). "Having properly and timely filed [a] motion raising the jurisdictional question a defendant may thereafter plead over, prepare for trial, utilize all of the procedures available in preparation for trial, *apply for or consent to continuances*, changes of venue, etc., *and* actually *try the case on the merits* …." *Id*. (emphasis added). As in *Greenwood*, White properly and timely raised her jurisdictional defense and, as a result, could consent to continuances and try the case on its merits.

Finally, Ridgetop argues White waived her jurisdictional defense because she filed her counterclaim simultaneously with her Motion to Overturn/Dismiss. While White's Motion to

16

Overturn/Dismiss and her counterclaim were both filed on April 4, 2024, this Court's record and the Case.net docket entry from the circuit court indicate White filed her Motion to Overturn/Dismiss *before* her counterclaim. *See* § 490.130 ("records of proceedings of any court of this state contained within any statewide court automated record-keeping system established by the supreme court shall be received as evidence of the acts or proceedings in any court of this state without further certification of the clerk …."). Even if Ridgetop is correct and White filed both motions simultaneously, White still would not have waived her jurisdictional defense. *Greenwood* is once again instructive:

> The motion raising the objection of lack of jurisdiction over the defendant's person may now be filed along with motions pertaining to other matters … and a motion raising this objection *may be filed simultaneously with pleadings … or* it may be *joined with other motions* provided for and then available to the defendant … without waiver of the objection of lack of jurisdiction over the person.

*Greenwood*, 396 S.W.2d at 726 (emphasis added); *see also* Rule 55.27(a) ("Motions [raising a jurisdictional defense] and pleadings may be filed simultaneously without waiver of the matters contained in either"); Rule 55.27(f) ("A party who makes a motion under this Rule 55.27 may join with it any other motions herein provided for and then available to the party."). Accordingly, even if White filed her Motion to Overturn/Dismiss simultaneously with her counterclaim, she would have not waived her claim because a motion raising a jurisdictional defense may be filed simultaneously with pleadings or other motions.

In sum, because White timely filed her jurisdictional defense, she was allowed to probe into the merits of the action by filing a counterclaim, consenting to a continuance, and actually trying the case.

Point I is granted. Because this point is dispositive, we decline to address Point II.

17

## Ridgetop's Motion for Attorney Fees

Ridgetop filed a motion for attorney fees on appeal, which was taken with the case. Ridgetop's motion seeks attorney fees under the attorney fees provision in White's lease and this Court's Local Rule 400.

"[E]ven if the contract is silent on the issue, a party may only recover its fees under a contract provision if it is a prevailing party." *Kansas City Live Block 139 Retail, LLC v. Fran's K.C. Ltd*, 504 S.W.3d 725, 736 (Mo. App. W.D. 2016) (quoting *Ken Cucchi Constr., Inc. v. O'Keefe*, 973 S.W.2d 520, 528 (Mo. App. E.D. 1998)). "To be a 'prevailing party', the party must ultimately prevail on appeal." *Home Serv. Oil Co. v. Cecil*, 513 S.W.3d 416, 421 (Mo. App. S.D. 2017) (quoting *Monsanto Co. v. Garst Seed Co.*, 241 S.W.3d 401, 417 (Mo. App. E.D. 2007)). A party arguing this Court should affirm a circuit court does not prevail if the circuit court's judgment is reversed. *Id.*

Because this Court must vacate the circuit court's judgment, Ridgetop is not the prevailing party and is not entitled to attorney fees. Ridgetop's motion for attorney fees is denied.

## Conclusion

The circuit court's judgment is vacated, and the case is remanded with specific instructions to dismiss the case without prejudice for lack of personal jurisdiction.

_____
Philip M. Hess, Presiding Judge


Gary M. Gaertner, Jr., J. and
Renée Hardin-Tammons, J. concur.

18